IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY C. CONKLIN and | : | CIVIL ACTION |
| MATTHEW THOMAS NAYLOR | : | |
| | : | |
| v. | : | |
| | : | |
| MORAN INDUSTRIES, INC., ET AL. | : | NO. 11-411 |

MEMORANDUM

**Padova, J.**                                                                                                    May 31, 2010

Plaintiffs Jeffrey C. Conklin and Matthew Thomas Naylor initiated this action in the Court of Common Pleas of Philadelphia County. Defendants removed the action to this Court on January 21, 2011, asserting that we have federal question jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331. Plaintiffs have filed a Motion for Remand, arguing that the action does not present a federal question. Plaintiffs also seek payment of the attorneys' fees and costs they incurred as a result of the removal, pursuant to 28 U.S.C. § 1447(c). For the reasons that follow, the Motion for Remand is granted, but the request for attorneys' fees and costs is denied.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

The Complaint alleges the following facts. Plaintiffs are pilots who began working for Defendants on July 22, 2009. (Comp. ¶ 47.) In August 2009, Defendants sent them to flight school to be trained to fly the Hawker 900XP operated by Defendant ACP Jet Charters, Inc. ("ACP"). (Id. ¶¶ 51, 60, 76.) Following their training, Plaintiffs became co-captains of the Hawker 900XP. (Id. ¶ 60.)

During their employment, Plaintiffs expressed concern to Defendants that Defendants were not complying with certain FAA regulations and laws relating to flight safety. (Id. ¶ 62.) Defendants terminated Conklin's employment on Februry 25, 2010, and terminated Naylor's employment

approximately five weeks later, on April 1, 2010. (Id. ¶ 47.) Plaintiffs claim that they were fired in retaliation for complaining about Defendants' violations of federal laws relating to flight safety and because Defendants feared that they would report Defendants' unlawful activities to the authorities. (Id. ¶¶ 226, 249-50.)

Plaintiffs initiated this action on January 3, 2011, by filing a complaint in the Court of Common Pleas of Philadelphia County. Count I of the Complaint avers that Defendants' termination of Plaintiffs violated Pennsylvania common law against wrongful termination. (Id. ¶ 253.) Specifically, Plaintiffs allege that their firings violated public policies expressed in the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, 49 U.S.C. § 42121 ("AIR 21"),[1] and in the Pennsylvania Whistleblower Law, 43 Pa. Stat. §§ 1421-1428. (Id. ¶¶ 254-263.) Count II of the Complaint asserts that Plaintiffs' terminations violated that portion of the Pennsylvania Whistleblower Law that bars an employer from discharging an employee because that employee has made a good faith report of wrongdoing or waste. (Id. ¶¶ 268-272.)

Although the Complaint alleges only state law claims, Defendants maintain that this Court has original jurisdiction over this action because the Complaint presents a federal question. (Notice of Removal ¶ 22.) Specifically, Defendants contend that Plaintiffs cannot prevail on their claim for

---

[1] AIR 21 provides, in pertinent part, that "no air carrier or contractor or subcontractor of an air carrier may discharge an employee" because he or she:
> (1) provided, caused to be provided, or is about to provide (with any knowledge of the employer) or cause to be provided to the employer or Federal Government information relating to any violation or alleged violation of any order, regulation, or standard of the Federal Aviation Administration or any other provision of Federal law relating to air carrier safety under this subtitle or any other law of the United States.

49 U.S.C. § 42121(a)(1).

wrongful termination without proving that their firings violated AIR 21, a federal law. Defendants aver that Count I of the Complaint presents four federal questions: (1) whether Plaintiffs' complaints that Defendants violated federal laws regarding air carrier safety were protected by AIR 21; (2) whether Plaintiffs are within the class of individuals protected by AIR 21; (3) whether Defendants are "air carriers" under federal law and thus subject to AIR 21; and (4) whether Defendants actually violated federal laws relating to air carrier safety. (Id. ¶¶ 22-24.) Plaintiffs have moved to remand this action on the ground that we lack subject matter jurisdiction over their claims.

## II.  LEGAL STANDARD

A defendant may remove a civil action filed in state court if the federal district court has "original jurisdiction founded on the Constitution, treaties or laws of the United States." 28 U.S.C. § 1441(b). The removing party bears the burden of establishing removal jurisdiction. Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990). Once a case has been removed from state court, the federal district court must remand the case "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). "Upon a motion to remand, 'it is always the removing party's burden to prove the propriety of removal, and any doubts about the existence of federal jurisdiction must be resolved in favor of remand.'" Casale v. Aurora Yarns, Civ. A. No. 10-460, 2010 WL 1407299, at *3 (E.D. Pa. Apr. 7, 2010) (quoting Lumbermans Mut. Cas. Co. v. Fishman, Civ. A. No. 99-929, 1999 WL 744016, at *1 (E.D. Pa. Sept. 22, 1999)). In ruling on a motion for remand, "the district court must focus on the plaintiff's complaint at the time the petition for removal was filed . . . [and] must assume as true all factual allegations of the complaint." Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987) (citations omitted). "'Because lack of jurisdiction would make any decree in

3

the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts resolved in favor of remand.'" Brown v. Francis, 75 F.3d 860, 864-65 (3d Cir. 1996) (quoting Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 29 (3d Cir. 1985)); see also Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999) ("A presumption in favor of remand is necessary because if a federal court reaches the merits of a pending motion in a removed case where subject matter jurisdiction may be lacking it deprives a state court of its right under the Constitution to resolve controversies in its own courts.").

### III. DISCUSSION

#### A. Federal Subject Matter Jurisdiction Over State Law Claims

Pursuant to 28 U.S.C. § 1331, the federal district courts have subject matter jurisdiction over "'all civil actions arising under the Constitution, laws, or treaties of the United States.'" Empire Healthchoice Assurance, Inc. v. McVeigh 547 U.S. 677, 689 (2006) (quoting 28 U.S.C. § 1331). "A case 'aris[es] under' federal law within the meaning of § 1331 . . . if 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" Id. at 689-90 (alteration in original) (quoting Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 27–28 (1983)). "This provision for federal-question jurisdiction is invoked by and large by plaintiffs pleading a cause of action created by federal law (*e.g.*, claims under 42 U.S.C. § 1983)." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005). However, "in certain cases federal-question jurisdiction will [also] lie over state-law claims that implicate significant federal issues." Id. (citation omitted). The Supreme Court has explained that "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized

4

under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." Id. (citation omitted).

Defendants argue that removal was proper in this case, and that we have federal question jurisdiction over Plaintiffs' claims, because resolution of Plaintiffs' wrongful termination claim depends on the construction and interpretation of AIR 21. However, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." Merrell Dow Pharms. Inc. v. Thompson, 478 U.S. 804, 813 (1986); see also Empire, 547 U.S. at 701 (stating that "it takes more than a federal element 'to open the arising under door.'" (quoting Grable, 545 U.S. at 313)). "Rather, the Supreme Court has 'confined federal-question jurisdiction over state-law claims to those that really and substantially involve a dispute or controversy respecting the validity, construction or effect of federal law.'" Lane v. CBS Broad., Inc., 612 F. Supp. 2d 623, 628 (E.D. Pa. 2009) (quoting Grable, 545 U.S. at 313). Only a "slim category" of state-law claims will satisfy this requirement. Empire, 547 U.S. at 701; see also Malofiy v. Cardiac Sci. Corp., Civ. A. No. 10-2377, 2010 WL 4611821, at *2 (E.D. Pa. Nov. 15, 2010) ("The Supreme Court has labeled the spectrum of claims sufficient to invoke jurisdiction under Grable & Sons a 'slim category.'" (quoting Empire, 547 U.S. at 701)).

The Supreme Court most recently analyzed when the "arising under door" should be opened in Grable and Empire and the reasoning in those opinions guides our evaluation of the propriety of removal in this case. The IRS seized and sold the property of Grable & Sons Metal Products, Inc. ("Grable") to satisfy a tax deficiency. Grable, 545 U.S. at 310. Grable brought a quiet title action in state court against Darue Engineering & Manufacturing ("Darue"), the purchaser of the property,

5

"claiming that Darue's record title was invalid because the IRS had failed to notify Grable of its seizure of the property in the exact manner required by [26 U.S.C.] § 6335(a)." Id. at 311. The Supreme Court held that removal of Grable's state law quiet title claim to federal court was proper for the following reasons: (1) Grable's claim against Darue was premised "on a failure by the IRS to give it adequate notice, as defined by federal law[;]" (2) "[w]hether Grable was given notice within the meaning of the federal statute [was] an essential element of its quiet title claim[;]" (3) "the meaning of the federal statute [was] actually in dispute;" (4) the meaning of the federal statute was "the only legal or factual issue contested in the case[;]" (5) interpretation of "the federal tax provision [was] an important issue of federal law that sensibly belong[ed] in a federal court[;]" (6) the government, tax delinquents, and buyers would all have an interest in having such claims determined by "judges used to federal tax matters[;]" and (7) since state title actions rarely raise issues of federal law, "federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor." Id. at 314-15.

The Empire case was commenced by Empire Healthchoice Assurance, Inc. ("Empire"), a private insurance company that provides health insurance to federal employees pursuant to the Federal Employees Health Benefits Act of 1959, 5 U.S.C. § 8901, *et seq.* Empire, 547 U.S. at 682, 687. Empire brought suit in federal court against a plan beneficiary who had been injured in an accident, seeking reimbursement for the beneficiary's medical care after the beneficiary successfully sued the person who caused the accident in state court. Id. at 683. Empire argued that the federal court had jurisdiction over its claim that the beneficiary had breached the reimbursement provision of his health insurance plan "because federal common law governed its reimbursement claim" or,

6

in the alternative, because the health insurance plan "itself constituted federal law." Id. at 688 (citation omitted). The Supreme Court disagreed, concluding that the federal courts did not have federal question jurisdiction over Empire's claims pursuant to 28 U.S.C. § 1331. Id. at 683. The Supreme Court explained that this case was "poles apart from Grable" because Grable "centered on the action of a federal agency (IRS) and its compatibility with a federal statute, the question qualified as 'substantial,' and its resolution was both dispositive of the case and would be controlling in numerous other cases." Id. at 700 (citing Grable, 545 U.S. at 313). The contract claim at issue in Empire, on the other hand, was unrelated to the actions of any "federal department, agency, or service," and the determination of how much of the settlement the beneficiary obtained from his state court tort claim should be paid to Empire was "fact-bound and situation-specific." Id. at 700-01.

To apply the Grable and Empire analysis in the instant case, we must decide whether Plaintiffs' wrongful termination claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable, 545 U.S. at 314. To do so, we must first understand the contours of a wrongful termination claim brought pursuant to Pennsylvania law.

    B.    <u>Pennsylvania Law Regarding Wrongful Termination</u>

In Pennsylvania, "the at-will employment doctrine provides that absent a statutory or contractual provision to the contrary, the employer and employee each have the power to terminate the employment relationship for any or no reason." Weaver v. Harpster, 975 A.2d 555, 557 n.3 (Pa. 2009) (citing Geary v. United States Steel Corp., 319 A.2d 174, 176 (Pa. 1974)). "[A]s a general rule, there is no common law cause of action against an employer for termination of an at-will

employment relationship." Id. at 562 (citing Clay v. Advanced Computer Applications, 559 A.2d 917, 918 (1989)). Consequently, "[a]n employee may bring a cause of action for a termination of [the at-will employment] relationship only in the most limited circumstances, where the termination implicates a clear mandate of public policy." Id. at 563. Typically, the legislature formulates public policy in Pennsylvania. Id. The Pennsylvania Supreme Court has, therefore, instructed that "the power of the courts to declare pronouncements of public policy is sharply restricted." Id. (citing Mamlin v. Genoe (City of Philadelphia Police Beneficiary Ass'n), 17 A.2d 407, 409 (Pa. 1941)). Thus, a court may "declare what is or is not in accord with public policy . . . 'only when a given policy is so obviously for or against public health, safety, morals, or welfare that there is a virtual unanimity of opinion in regard to it.'" Id. (citing Mamlin, 17 A.2d at 409).

The Pennsylvania courts have recognized that there are "three limited circumstances in which public policy will trump employment at-will." Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 111 (3d Cir. 2003) (citing Hennessy v. Santiago, 708 A.2d 1269, 1273 (Pa. Super. Ct. 1998)). "[A]n employer (1) cannot require an employee to commit a crime [and fire the employee for refusing to do so], (2) cannot prevent an employee from complying with a statutorily imposed duty, and (3) cannot discharge an employee when specifically prohibited from doing so by statute.'" Id. (alterations in original) (quoting Hennessy, 708 A.2d at 1273); see also Spyridakis v. The Riesling Grp., Inc., 398 F. App'x 793, 799 (3d Cir. 2010) (same). Since the Complaint alleges that Plaintiffs' firings violated AIR 21, which statute prohibits an air carrier, contractor or subcontractor of an air carrier from firing an employee who provides his or her employer with information relating to violations of law relating to air carrier safety, it appears that Plaintiffs' wrongful termination claim relies on the third circumstance. However, in ascertaining whether a termination violates

8

Pennsylvania public policy, the Pennsylvania courts "examine the precedent within Pennsylvania, looking to [the Pennsylvania] Constitution, court decisions, and statutes promulgated by [the Pennsylvania] legislature." Weaver, 975 A.2d at 563 (citations omitted). Indeed, the Pennsylvania Supreme Court has made it clear a plaintiff may only bring a claim for wrongful termination if his or her termination violated the public policy of Pennsylvania. Thus, the possibility that an individual's termination violated federal law is itself insufficient to establish that his or her termination violated Pennsylvania public policy:

> in order to set forth a claim for wrongful discharge a Plaintiff must do more than show a possible violation of a federal statute that implicates only her own personal interest. The Plaintiff in some way must allege that some *public* policy of *this* Commonwealth is implicated, undermined, or violated because of the employer's termination of the employee. Public policy of the Commonwealth must be just that, the policy of this Commonwealth.

McLaughlin v. Gastrointestinal Specialists, Inc., 750 A.2d 283, 289 (2000). Consequently, it would be "a mistake to baldly point to a federal statute or administrative regulation and, without more, proclaim this as the public policy of the Commonwealth, such that every violation of any federal code, or statute becomes the basis for seeking a common law remedy against an employer." Id. This reasoning applies to federal laws that prohibit firing employees that complain about safety violations. See McLaughlin, 750 A.2d at 288 ("We believe that it is of no moment that federal regulations may provide administrative protection to employees who make [complaints about] safety violations to their employers unless of course the employee is able to articulate a particular policy within the Commonwealth that is threatened.").

C. <u>The Alleged Violation of AIR 21</u>

Defendants maintain that we have federal question jurisdiction over Plaintiffs' wrongful termination claim because the court that decides that claim must determine whether Plaintiffs' firings violated AIR 21. However, as an initial matter, no court will even reach the question of whether Plaintiffs' firings violated AIR 21 unless it first concludes that AIR 21 embodies the public policy of Pennsylvania. Defendants have the burden of establishing that we have subject matter jurisdiction over Plaintiffs' wrongful termination claim, <u>Boyer</u>, 913 F.2d at 111, yet they have made no attempt to establish that Pennsylvania has adopted the policy set forth in AIR 21 as its own public policy. Because "it is always the removing party's burden to prove the propriety of removal," <u>Casale</u>, 2010 WL 1407299, at *3 (quotation omitted), and Defendant has not established that the court that ultimately decides Plaintiffs' claims will ever reach the federal aspect of Plaintiffs' wrongful termination claim, we conclude that Defendants have not satisfied their burden of proving that we have subject matter jurisdiction in this case.

Moreover, even if Defendants had conclusively established that AIR 21 embodies the public policy of Pennsylvania, the application of that statute in this case would not confer federal question jurisdiction. First, Defendants do not claim that the meaning of AIR 21 itself is disputed. Second, this does not appear to be a situation in which the meaning of the federal statute is "the only legal or factual issue contested in the case[,]" <u>Grable</u>, 545 U.S. at 315; or where there is a question regarding the interpretation or application of AIR 21 that would implicate "significant federal interests." <u>Kalick v. Northwest Airlines Corp.</u>, 372 F. App'x 317, 320 (3d Cir. 2010). Rather, as in <u>Empire</u>, the federal claim at issue in this case is unrelated to the actions of any federal agency, and the determination of whether Defendants violated AIR 21 is "fact-bound and situation-specific."

10

Empire, 547 U.S. at 700. Moreover, the determination of the AIR 21 aspect of Plaintiff's wrongful termination claim would not necessarily be dispositive of that claim because Count I of the Complaint also alleges that Plaintiffs' firings violated the public policy of Pennsylvania as embodied in the Pennsylvania Whistleblower Law. Consequently, we conclude that, even if AIR 21 embodies Pennsylvania public policy, Plaintiffs' claim for wrongful termination in violation of that policy would not depend on the resolution of a substantial question of federal law. Id. at 690 (citation omitted). We hold that Defendants have failed to establish that this case belongs in the "slim category" of state-law claims over which we should exert original jurisdiction pursuant to 28 U.S.C. § 1331.

## IV.   CONCLUSION

For the foregoing reasons, we conclude that Defendants have not satisfied their burden of proving the propriety of removal in this case. See Casale, 2010 WL 1407299, at *3. We therefore remand this case to the Court of Common Pleas of Philadelphia County.

Plaintiffs have asked that we award them the attorneys' fees and costs they incurred as a result of the removal, pursuant to 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "[T]he standard for awarding fees [turns] on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). Since Plaintiffs' wrongful termination claim does, in part, rest on a federal statute, and Defendants made a colorable -- if ultimately unsuccessful -- argument in favor of subject matter jurisdiction, we find that Defendants

11

had an objectively reasonable basis for seeking removal in this case. Plaintiffs' request for an award of their attorneys' fees and costs is, accordingly, denied.

An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.